Surge Resources v. Barrow Group et al CV-02-145-B    03/12/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Surge Resources, Inc.**

    **v.**                                   Civil No. 02-145-B
                                      Opinion No. 2003 DNH 041
**The Barrow Group, et al.**


### MEMORANDUM AND ORDER

Surge Resources, Inc. ("Surge"), a New Hampshire corporation, brings this action against various defendants, including the insurance broker Black, Davis & Shue Agency, Inc. ("BDS"), and its employee, Robert Howell.  Surge alleges that BDS and Howell breached their "contractual duties" by failing to provide workers' compensation insurance coverage for Surge's employee leasing business.  Furthermore, Surge contends that these defendants made fraudulent representations regarding the terms and conditions of an insurance policy offered by the Artis Group, a subsidiary of the Royal SunAlliance insurance company.  Before me is BDS' and Howell's motion to dismiss the following claims:  breach of contract (Count I of Surge's complaint; Count

III of Surge's counterclaim[1]); fraud and deceit (Count II of the complaint; Count II of the counterclaim); unfair trade practices under RSA 358-A (Count V of the complaint; Count V of the counterclaim); and all claims brought against Howell individually. I grant the motion as it pertains to the breach of contract and unfair trade practices claims, and deny the motion as it pertains to the fraud and deceit claims. I also dismiss Count IV of Surge's counterclaim as against Howell.

## I. BACKGROUND

The following facts are taken from Surge's complaint and counterclaims. Surge's business consists of leasing employees to corporations and handling the payroll and benefit management services of the leased employees. Under New Hampshire law, Surge is required to obtain a master workers' compensation insurance policy for its leased employees.

After experiencing difficulties with its former insurance broker, Barrow Group, LLC, Surge turned to William Haines, of the

_____

[1] For reasons that are not apparent in the record, Surge has realleged claims it made in its original complaint, and alleged additional claims, as counterclaims to counterclaims filed by Artis.

-2-

Congressional Management Group, to assist Surge in obtaining a new insurance policy. Haines assured Surge that it could obtain a new master insurance policy that Congressional was developing for Surge in conjunction with BDS. In the Spring of 2001, BDS informed Surge that the Artis Group, a subsidiary of Royal SunAlliance Insurance, would provide Surge with its required insurance coverage.

Howell, an employee at BDS and a managing general agent representing Artis, informed Surge that Artis would offer it one year of insurance coverage. The policy's effective date was anticipated to be June 1, 2001. Surge accepted Artis' offer. However, Howell allegedly delayed the effective date of coverage numerous times. Apparently, this particular policy was never implemented.

In July 2001, Howell told Surge that BDS was "legally able to bind Artis' coverage" and that Artis' rates would now be 2% to 4% lower than Surge's current insurer. Compl. at ¶¶ 57, 58. Surge again accepted Artis' new offer to provide coverage at the rates communicated to Surge by Howell. On August 1, 2001, the New Hampshire Department of Labor was told that Surge's new insurance carrier was Artis. Soon thereafter, Artis attempted to

avoid commencement of the insurance policy, changed the terms of coverage, and ultimately canceled the policy on September 21, 2001. Surge was compelled to seek coverage at a much higher rate than the insurance contract it had with Artis.

## II. DISCUSSION

### A. Breach of Contract Claims

In order to state a breach of contract claim, Surge must allege that it had an enforceable contract with BDS. Whether an alleged contract is legally sufficient is a question of law for the court to decide. See Provencal v. Vermont Mut. Ins. Co., 132 N.H. 742, 745 (1990). Here, Surge's breach of contract claim is based solely upon the agreement between Surge and Artis. The complaint alleges that Surge entered into an insurance contract with Artis, under which Artis agreed to provide coverage, and in exchange, Surge agreed to pay premiums. See Compl. at ¶ 77. Neither the complaint nor Surge's counterclaim alleges that BDS or its employee was a party to the insurance contract. Without such privity of contract, or any allegations that a contract supported by mutual consideration existed between BDS and Surge,

-4-

Surge's complaint and counterclaim fail to state a claim for breach of contract against BDS. In short, neither the complaint nor the counter claim alleges that there was a valid agreement between Surge and BDS, see Provencal, 132 N.H. at 745. Thus, I grant the motion to dismiss Count I of the complaint and Count III of the counterclaim as against BDS and Howell.[2]

## B. Fraud and Deceit Claims

In cases alleging fraud or misrepresentation, "heightened pleading" is required whereby the plaintiff must identify the circumstances giving rise to the fraud or mistake with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to specify the time, place, and content of an allegedly false representation. See Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

---

[2] Surge's conclusory assertion that BDS owed it "contractual duties" is insufficiently specific to save its claim from the defendants' motion to dismiss. See Barrington Cove v. R.I. Housing and Mortg., 246 F.3d 1, 5 (1st Cir. 2001). I note that my conclusions here have no bearing upon Surge's counterclaim for promissory estoppel, as the dismissal of this claim was not raised by BDS or Howell in its motion and thus I do not address it on my own initiative.

Under the standard described above, Surge's complaint alleges fraud with particularity.[3] Specifically, Surge alleges that on July 18, 2001, BDS informed Surge via facsimile that "[t]he rates from Artis will be 2% to 4% lower than Frontier." Compl. at Ex. D, see id. at ¶ 58. Furthermore, the complaint contends that BDS knew this statement was false and that Surge relied upon it when it decided to procure the insurance policy issued by Artis. Also, Surge's allegation that BDS represented that it could "legally bind" Artis is similarly alleged with particularity. See Compl. at ¶ 57. The complaint, in regard to these alleged misrepresentations, satisfies the heightened pleading requirement of Rule 9(b).[4] Accordingly, I deny the defendants' motion as it pertains to Count II of the complaint and Count II of the counterclaim.

---

[3] I consider the exhibits appended to the complaint as part of the complaint. See In re Lane, 937 F.2d 694, 696 (1st Cir. 1991).

[4] Count II of the counterclaim also alleges that BDS misrepresented the period of time for which Artis would provide coverage. This allegation lacks specific details regarding the time, place, or content of the alleged misrepresentation, and therefore cannot form the basis of Surge's fraud or intentional misrepresentation claim.

-6-

## C.    Consumer Protection Claims Under RSA 358-A

In <u>Bell v. Libery Mut. Ins. Co.</u>, 146 N.H. 190, 194 (2001), the New Hampshire Supreme Court unequivocally held that "the insurance trade is exempt from the Consumer Protection Act pursuant to RSA 358-A:3, I."  Here, the plaintiff argues that because BDS is allegedly not licensed in New Hampshire, it may maintain a suit for consumer fraud under RSA 358-A (1995 & Supp. 2002), rather than pursue such an action under RSA 417:1, <u>et</u> <u>seq.</u> (1998 & Supp. 2002).  I reject this argument.  First, Surge's complaint plainly states that BDS is "engaged in the business of insurance brokerage services."  Compl. at ¶ 4  Thus, according to its own complaint, BDS falls within the definition of a person "engaged in the business of insurance, including . . . brokers," for purposes of New Hampshire's Unfair Insurance Trade Practices Act.  RSA 417:2, I.  Second, even if BDS is not licensed, engaging in the business of insurance without proper licensing is the type of conduct RSA 417 is designed to address.  <u>See</u> <u>generally</u> RSA 417:4, :12.  Accordingly, Surge's claims under the Consumer Protection Act, RSA 358-A, are dismissed.  Surge may amend its complaint and counterclaim, however, to add BDS to Count VI of its complaint, which alleges violations of RSA 417 by

other defendants engaged in the business of insurance.

**D. <u>Howell's Individual Liability</u>**

Because Surge has not plead any facts that support piercing the corporate veil, BDS and Howell contend that Surge may not maintain any action against Howell individually. In response, Surge argues that Howell used the corporate identity of BDS to commit a fraud upon Surge. This, Surge contends, is enough to pierce the corporate veil and support the claims against Howell individually.

While it is true that "the corporate veil may be pierced by finding that the corporate identity has been used to promote an injustice or fraud on the plaintiffs," <u>Terren v. Butler</u>, 134 N.H. 635, 639 (1991), this rule has no bearing upon Howell's individual liability for his alleged tortious conduct while acting as an employee of BDS.

An employee is personally liable for his tortious conduct even if he is acting on his employer's behalf. <u>See</u> Restatement (Second) of Agency §§ 343, 348. Furthermore, if an employee commits a tort and the employer is vicariously liable, the

-8-

injured party may seek to recover from either.  <u>See</u> R. McNamara, <u>N.H. Practice, Personal Injury</u> § 173, 247 (2d ed. 1996).  Surge seeks to recover from BDS and Howell for Howell's alleged tortious conduct.  Accordingly, Howell may be individually liable for his alleged conduct even if he was acting on BDS's behalf when he made his alleged misrepresentations.  Thus, I deny the motion to dismiss Howell as it pertains to Counts II, III and IV of the complaint, and Counts I and II of the counterclaim. Howell, however, is not properly named in Surge's counterclaim for promissory estoppel.  According to the counterclaim, the alleged promise to perform, which Surge apparently relied upon, runs to BDS, not its employee.  <u>See</u> <u>e.g.</u>, <u>Phillips v. Verax Corp.</u>, 138 N.H. 240, 242-43 (1994) (corporation sued for promissory estoppel arising out of promises made by corporation's agents).  Count IV of the counterclaim is therefore dismissed to the extent that it seeks to hold Howell liable in his individual capacity.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, I dismiss the breach of contract claims and unfair trade practices claims as against BDS and

Howell (Counts I and V of the complaint, Counts III and V of the counterclaim), but deny BDS' motion to dismiss as it pertains to the fraud and deceit claims.  Lastly, Count IV of the counterclaim is dismissed insofar as it applies to Howell.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


March 12, 2003

cc:  Charles G. Douglas, III, Esq.
     James C. Gallagher, Esq.
     Merrick Charles  Weinstein, Esq.
     Robert C. Dewhirst, Esq.